UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Stuart Strnad, | |
| *Plaintiff,* | No. 24 CV 6177 |
| v. | Judge Lindsay C. Jenkins |
| Scott Kabel, *et al.*, | |
| *Defendants.* | |

MEMORANDUM OPINION AND ORDER

Plaintiff Stuart Strnad brings this direct and derivative action against his former co-shareholder, Scott Kabel, and Kabel's company, ChargeFDIS Inc. ("ChargeFDIS"), alleging breach of and conspiracy to breach fiduciary duty and fraudulent concealment and misrepresentation. [Dkt. 1.][1] Before the Court is Defendants' motion to dismiss the entire complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Dkt. 15.] For the reasons below, the motion is granted in part and denied in part.

## I.    Background

The Court takes Strnad's well-pleaded factual allegations as true for purposes of ruling on the motion to dismiss. *See Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In 2019, Strnad was a senior business development employee at GenCanna, a hemp farming company and CBD wholesale supplier. [Dkt. 1, ¶ 11.] At the time, GenCanna was pursuing business with cannabis company Cresco Labs

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

("Cresco"). Strnad built relationships with Cresco's executive team through dozens of meetings to further GenCanna's business. He was also childhood friends with Cresco's Director of Operations, Joseph Ales. [*Id.*]

By the spring of 2019, Strnad became aware of a need for electronic payment processing in the cannabis industry in light of banking regulations for cannabis. [*Id.* at ¶¶ 12, 19.] Strnad saw an opportunity to obtain the payment processing business at Cresco due to his relationships at the company and because he knew someone who could help—Scott Kabel. [*Id.*] Strnad had been friends with Kabel since high school and knew he had experience in the payment processing industry. [*Id.* at ¶¶ 9–10.] Strnad had even referred clients to Kabel for these services since at least 2009. [*Id.*] Kabel wasn't working in payment processing or pursuing any processing clients in 2019 but maintained industry connections. [*Id.* at ¶ 13.]

Strnad broached the idea of providing Cresco a payment processing solution to Kabel over dinner on May 19, 2019. Another GenCanna employee was also present. [*Id.* at ¶ 14.] Strnad and Kabel met multiple times in May individually and with GenCanna personnel (including Ales) to discuss the idea and a potential GenCanna/Cresco supply agreement. On May 20, 2019, they agreed to form a company. [*Id.* at ¶¶ 15–16.]

On June 25, 2019, Strnad and Kabel formed Activate Payments, Inc. ("Activate Payments") in Illinois. Each held 50% of the shares and Kabel was named President. Strnad was not an officer of the company. [*Id.* at ¶ 17.] From June to October 2019, Strnad and Kabel pursued business with Cresco. Strnad purchased an internet

domain for the company ("www.activate-payments.com"). Both shareholders met with GenCanna and other CBD companies to discuss payment processing options and began vetting different solutions. [*Id.* at ¶¶ 19–21.] Because Strnad was also discussing business with Cresco on behalf of his own employer, GenCanna, Strnad and Kabel agreed that Kabel would be the face of Activate Payments in its pitch to Cresco to avoid confusion, but Strnad would introduce him to his Cresco contacts. [*Id.* at ¶ 18.] For example, on July 23, 2019, Strnad discussed Activate Payments' Cresco opportunity with Ales, who told Strnad he would connect Kabel with Cresco's Director of Strategic Sourcing, Paul Ochsner. He did, and Kabel began discussing Activate Payments with Ochsner around August 2019. [*Id.* at ¶¶ 23–24.] On August 4, 2019, Kabel sent Ochsner a proposal on behalf of Activate Payments for a cashless ATM processing solution based on rates that a payment processing software provider, MiCamp Solutions, had sent to Activate Payments. [*Id.* at ¶¶ 27–28.]

Throughout the remainder of 2019 and 2020, Kabel led Activate Payment's discussions with Cresco and communicated with them and other third parties from his activate-payments.com email address. [*Id.* at ¶¶ 29, 32.]

Between October 2019 and October 2020, Strnad repeatedly asked Kabel for updates on the Cresco discussions. Strnad almost always initiated these conversations but Kabel put him off each time, stating that nothing was happening with the deal, he was waiting for an email from Cresco, or that Cresco had other priorities and would get back to him. Kabel never stated that Activate Payments had an opportunity to close the deal with Cresco. [*Id.* at ¶¶ 33–35.] On October 3, 2020,

3

Kabel said that the deal had gone nowhere. Finally, in October or November 2020, Kabel told Strnad that the opportunity was lost and that they should dissolve Activate Payments rather than renew the company with the Illinois Secretary of State. Strnad agreed and on November 13, 2020, Kabel dissolved the company. [*Id.* at ¶¶ 36–38.]

Unbeknownst to Strnad, on August 6, 2020, Kabel and his own company, ChargeFDIS, filed an "Application to Adopt an Assumed Corporate Name" on behalf of ChargeFDIS to use the name "Activate Payment Services." [*Id.* at ¶ 39.] Strnad was not part of ChargeFDIS. [*Id.* at ¶ 1.] Strnad alleges that Kabel did this so that Cresco, who knew Strnad was in business with Kabel and made the introduction, would believe that Kabel was still operating through the same entity after Activate Payments was dissolved. [*Id.* at ¶ 39.] Kabel, through ChargeFDIS or another entity, entered an agreement with a payment processor to be able to provide a solution to Cresco, and sometime after October 14, 2019, entered an agreement with Cresco to provide the payment procession solution. [*Id.* at ¶¶ 41–42.]

Kabel never mentioned the Cresco deal to Strnad even though they communicated several times between November 2020 and April 2024. [*Id.* at ¶ 42.] On April 20, 2024, while Strnad was visiting Kabel, he told Strnad that he obtained the Cresco business through ChargeFDIS or another entity years earlier. He was originally making $1.25 per transaction but, after renewing the deal, was only making $.25 per transaction. Even so, Kabel said he was earning $80,000 per month. He also stated that he was working with additional dispensaries based on having

4

successfully worked with Cresco. Strnad alleges that Kabel and ChargeFDIS have reaped millions of dollars in profits since they started working with Cresco. [*Id.* at ¶ 43.] As of July 22, 2024, Kabel represents on LinkedIn that he is President of Activate Payments and his profile links to the company website he and Strnad created. [*Id.* at ¶ 45.]

## II.    Legal Standard

At the motion to dismiss stage, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted)).

## III.    Analysis

Strnad asserts four claims against Kabel for breach of and conspiracy to breach fiduciary duty, fraudulent concealment, and fraudulent misrepresentation (Counts I–IV). Only Count II is asserted against both Defendants. All claims are brought individually and derivatively on behalf of Activate Payments. Before addressing Defendants' Rule 12(b)(6) arguments for dismissal, the Court raises pleading

requirements and standing issues that the parties neglected but that nevertheless impact the propriety of Strnad's claims.

### A.    Derivative Claims (Rule 23.1)

Federal Rule of Civil Procedure 23.1 sets forth specific pleading requirements for a shareholder derivative action. *See Westmoreland Cnty. Emp. Ret. Sys. v. Parkinson*, 727 F.3d 719, 721–22 (7th Cir. 2013) ("[T]he adequacy of [shareholder derivative] pleadings is measured by . . . Rule 23.1."). Rule 23.1(b) states that the complaint for a derivative action must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Although Defendants did not raise Rule 23.1 in their motion to dismiss, verification is important to ensure that the court will not be used for "strike suits" and that a plaintiff has "investigated the charges and found them to be of substance." *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 180 (N.D. Ill. 1987); *see also Vanco v. Mancini*, 495 F. Supp. 3d 712, 728–29 (N.D. Ill. 2020) (*sua sponte* requiring plaintiff to amend complaint to comply with Rule 23.1).

6

Strnad's complaint doesn't fully comply with Rule 23.1. It does state that he was a shareholder when Activate Payments was dissolved. [Dkt. 1 at ¶¶ 17, 37.] It also invokes the demand futility doctrine, which excuses a shareholder under Rule 23.1(b)(3)(B) from asking the company's board to bring a derivative action if "facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule." *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 806–07 (7th Cir. 2003) (internal quotation omitted).[2] Strnad alleges that it would have been futile to demand Kabel to sue because he is the target of the lawsuit, profited from his alleged wrongs, and controlled Activate Payments with his 50% share and status as President. [Dkt. 1 at ¶¶ 47–50.] In this situation, it is implausible that Kabel would have sued to challenge his own alleged self-dealing. *See Powell v. Gant*, 556 N.E.2d 1241, 1245 (Ill. App. Ct. 1990) (demand futility doctrine excuses demand requirement when the majority of directors are the alleged wrongdoers). Strnad is excused from making a prior demand.

But the complaint is not verified and does not allege that Strnad's action is not a collusive one to confer jurisdiction on the Court. Therefore, Strnad must amend his complaint to comply with Rule 23.1 in order to bring his derivative claims. *See Mancini*, 495 F. Supp. 3d at 729; *Guttillo*, 115 F.R.D. at 180 (failure to verify complaint is a technical defect curable by amendment).

---

[2] State law determines whether the reasons given to show demand futility under Rule 23.1(b)(3)(B) are sufficient. *Westmoreland*, 727 F.3d at 722. Under Illinois choice of law rules, the law of Activate Payments' place of incorporation, Illinois, governs Strnad's claims. *Lowinger v. Oberhelman*, 924 F.3d 360, 366 (7th Cir. 2019).

### B.     Individual Claims (Shareholder Standing Rule)

Next, the Court examines Strnad's standing for his individual claims. It is well-established that a litigant cannot sue in federal court to enforce the rights of third parties. *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2012) (citing *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990)); *see also* Fed. R. Civ. Pro. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."). One limitation on third party standing is the shareholder standing rule, which holds that a shareholder generally cannot sue for indirect harm he suffers due to an injury to the corporation. *Korte*, 735 F.3d at 668. In other words, if injury to a shareholder is solely caused by injury to the company, and all shareholders of that company would be harmed in the same manner, the individual shareholder can only bring a derivative claim. This is so even where, as here, a company only has two shareholders. *Frank v. Hadesman & Frank, Inc.,* 83 F.3d 158 (7th Cir. 1996) (declining to carve out a special shareholder standing rule for closely held corporations, even when there are only two investors and one is the wrongdoer); *Triumph Packaging Grp. v. Ward*, 2012 WL 5342316, at *3–4 (N.D. Ill. Oct. 29, 2012) (following *Frank*).

Shareholder standing is a prudential rule that the Court can address *sua sponte* or allow to be waived. *Korte*, 735 F.3d at 668; *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756–57 (7th Cir. 2008). Although not raised here, the Court invokes it to maintain a "clear distinction" between direct and derivative actions. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 647 (7th Cir. 2006) ("[A]llowing a derivative action to proceed as a direct one allows for the possibility of multitudinous

litigation brought by shareholders *and* the corporation, with the corresponding risk of double-counting (and double-punishment).").

Shareholder standing analysis requires the Court to look at each claim and determine whether the "gravamen" of the pleadings describes a direct injury to the shareholder plaintiff. *Zokoych v. Spalding*, 344 N.E.2d 805, 813 (Ill. App. Ct. 1976); *Triumph Packaging Grp.*, 2012 WL 5342316, at *4. It is well-established that harm to a corporation that injures a shareholder only through a diminution in share price is not a direct injury because all shareholders are harmed in the same way. *Massey*, 464 F.3d at 646. By contrast, direct harms to a shareholder are those that are a "separate and distinct" injury or an "injury that involves a contractual right that exists independently of any corporate right." *McNichols v. Weiss*, 2018 WL 5778413, at *4 (N.D. Ill. Nov. 2, 2018) (quoting *Davis v. Dyson*, 900 N.E.2d 698, 710 (Ill. App. Ct. 2008)). For instance, shareholders can directly enforce rights that belong to them such as the right to vote or assert majority control. *Spillyards v. Abboud*, 662 N.E.2d 1358, 1363 (Ill. App. Ct. 1996).

In addition to these common shareholder rights, Illinois law gives shareholders in a non-public corporation a specific right against shareholder oppression. 805 ILCS 5/12.56(a)(3); *see Toscano v. Koopman*, 148 F. Supp. 3d 679, 687–88 (N.D. Ill. 2015). Under this provision, a shareholder may seek a variety of remedies if "directors or those in control of the corporation" engaged in "illegal, oppressive, or fraudulent conduct." 805 ILCS 5/12.56(a)(3), (b)(1)-(12). Because this is a statutory right, a shareholder can bring a shareholder oppression claim individually even if they lack

standing to bring a derivative suit. *See Bone v. Coyle Mech. Supply, Inc.*, 2017 IL App (5th) 150117-U, ¶ 40 ("Under Illinois common law, a shareholder seeking relief for an injury to the corporation . . . must bring his suit derivatively on behalf of the corporation . . . However, no such requirement exists with regard to a cause of action brought pursuant to [§ 12.56], which clearly gives a shareholder standing to proceed directly."); *Toscano*, 148 F. Supp. 3d at 687–88; *see also In re Midwest M & D Servs., Inc.*, 652 B.R. 805, 809–11 (Bankr. C.D. Ill. 2023) (discussing *Toscano* and *Bone*).

Here, Strnad quoted excerpts of 805 ILCS 5/12.56 in a section of the complaint discussing the demand requirement for derivative allegations. [Dkt. 1, ¶ 51.] But his actual claims are for breach of fiduciary duty and fraud, not shareholder oppression, and they do not cite any law under which they have been brought. [*Id.* at ¶¶ 52–82.] The parties' briefs also only address common law claims, implying that both understand these to be the only claims at issue. The Court therefore assumes that each count presents a claim under Illinois common law. Since the claims don't involve a violation of a shareholder's statutory or contractual right, the Court must assess whether the injuries asserted are derivative or not.

As to Counts I and II, breach of fiduciary duty and usurpation of business opportunities are "classic injuries to the corporation" appropriately remedied through a derivative action. *Ching v. Porada*, 560 F. Supp. 2d 675, 678–79 (N.D. Ill. 2008). This is because they generally injure "all investors alike." *Id.* (quoting *Frank*, 83 F.3d at 160). Strnad alleges that Kabel did not faithfully pursue the deal with Cresco and then, through fraudulent concealment and misrepresentation of the opportunity,

10

induced Strnad to dissolve Activate Payments. This allowed Kabel to usurp the business opportunity for himself, robbing Activate Payments and Strnad, as a co-shareholder, of millions of dollars in profits. The only injury to Strnad is loss of profit, which he would have received by virtue of his 50% share in Activate Payments. And if there had been other shareholders, they would have been injured in the same way because Activate Payments was dissolved. Therefore, Counts I and II allege indirect injuries to Strnad and can only be brought as derivative actions on behalf of Activate Payments.

Counts III and IV, which allege fraudulent concealment and misrepresentation, must also be brought derivatively. As above, Strnad alleges that Kabel concealed material details about the Cresco opportunity from Strnad and falsely represented that it was lost. Based on these representations, Strnad agreed to dissolve Activate Payments and thereby lost all profit he would have received if they had completed the deal through Activate Payments, rather than Kabel secretly usurping it with a separate company. The Court fails to see how this injury to Strnad is separate from that to Activate Payments. Had there been other shareholders, they would have been similarly injured by the dissolution of the company. *See, e.g.*, *First Midwest Bank v. Trainor*, 2014 IL App (1st) 140963-U, ¶¶ 40-41 (false misrepresentation claim alleged derivative injury where plaintiff shareholder induced to invest additional funds into company); *cf. Andrews v. Gerace*, 2014 WL 4627383, at *9 (N.D. Ill. Sept. 15, 2014) (false misrepresentation claim alleged direct injury where fraud occurred *before* plaintiff shareholders bought shares in the

company). Consequently, the individual claims in Counts I–IV are dismissed without prejudice. [3]

## C.    Rule 12(b)(6)

Defendants argue that Counts I–IV should be dismissed under Rule 12(b)(6) for failure to state a claim. To survive a motion to dismiss for failure to state a claim, a complaint must include sufficient factual allegations to show a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, the facts in the complaint must present a claim that rises "above the speculative level." *Id.* at 545. Claims sounding in fraud, however, must be pled with particularity under Rule 9(b), which requires alleging "the first paragraph of any newspaper story, i.e., the who, what, when, where, and how of the fraud." *Lanahan v. Cnty. of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) (cleaned up).

### 1.    Counts I and II

Count I claims that Kabel breached his fiduciary duty to Activate Payments and Strnad to conduct the business of Activate Payments loyally, faithfully, carefully, diligently, honestly, and prudently. Count II similarly claims that Kabel and ChargeFDIS conspired to breach Kabel's fiduciary duty. The Court takes claim each in turn.

In Illinois, the elements of breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) damages proximately caused by the

---

[3]    Strnad can still sue derivatively on behalf of Activate Payments even though it has been dissolved because he sued within the five-year statute of limitations period set by the Illinois corporate-survival statute. *See* 805 ILCS 5/12.80; *Williams v. Bd. of Educ. of City of Chi.*, 506 F. App'x 517, 519–20 (7th Cir. 2013).

breach. *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 661 (7th Cir. 2024); *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). The individuals who control a corporation—officers and directors—owe a fiduciary duty to their corporation and its shareholders. *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011); *Paul H. Schwendener, Inc. v. Jupiter Elec. Co.*, 829 N.E.2d 818, 828 (Ill. App. Ct. 2005). Fiduciary duties include due care, loyalty, good faith, and prudent management of the corporation's affairs. *Star Forge, Inc. v. F.C. Mason Co.*, 2014 IL App (2d) 130527-U, ¶ 18 (citing *Maercker Point Villas Condo. Ass'n v. Szymski*, 655 N.E.2d 1192, 1194 (Ill. App. Ct. 1995)). Holders of stock in a closely held corporation, as where co-shareholders each hold 50% of the shares, also have a fiduciary duty to "deal fairly, honestly, and openly with their fellow stockholders and to make disclosure of all essential information." *Talton v. Unisource Network Servs., Inc.*, 2002 WL 31018297, at *11 (N.D. Ill. Sept. 9, 2002) (quoting *Hagshenas v. Gaylord*, 557 N.E.2d 316, 323 (Ill. App. Ct.1990)).

Since it is alleged that Kabel controlled Activate Payments through his 50% share in the company and position as an officer (whereas Strnad was not an officer), he had a fiduciary duty to the company and Strnad. [Dkt. 1, ¶¶ 17, 48.] He also owed Strnad fiduciary duties as a co-shareholder in a closely held corporation.

Defendants only contest breach and proximate cause. They argue that they are protected from liability by the business judgment rule, which holds that "[a]bsent evidence of bad faith, fraud, illegality or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors." *Davis*, 900 N.E.2d at 694 (quoting *Fields v. Sax,* 462 N.E.2d 983, 988 (Ill. App. Ct. 1984)). They

13

contend that the complaint doesn't contain these necessary elements. Specifically, it doesn't plead facts showing that Kabel intentionally failed to diligently pursue a business opportunity. [Dkt. 15 at 3–4.] Consequently, Strnad had not pled breach or proximate cause.

As Strnad points out, the complaint does plead breach in multiple ways: Kabel not only purposely failed to diligently pursue Activate Payments' corporate opportunities, but also failed to fully and accurately disclose their status, misrepresented said opportunities, usurped the Cresco deal and other deals for his benefit, and acted in a manner that is illegal, oppressive, and fraudulent. [Dkt. 1 at ¶¶ 55, 62.] It supports these allegations with a chronology of specific factual allegations describing how Kabel repeatedly lied about the progress of the Cresco deal to convince Strnad that Activate Payments should be dissolved and then diverted the Cresco deal to ChargeFDIS. [Dkt. 1, ¶¶ 36–41, 43.] Strnad also pleads proximate causation, explaining that "[s]ince closing the deal with Cresco, Kabel and ChargeFDIS have reaped millions of dollars in fees that should have belonged to Activate Payments, the profits from which Strnad should have received fifty percent." [*Id.* at ¶ 1.] Based on these allegations, Strnad has sufficiently pled Count I.

In Count II, Strnad claims that Kabel and ChargeFDIS conspired to breach Kabel's fiduciary duty to Activate Payments and Strnad. Illinois law defines civil conspiracy as: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators

committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004)). Since Strnad sufficiently pled breach of fiduciary duty, the Court focuses on the first two elements.

Defendants argue that Strnad has not alleged conspiracy because he has not presented facts showing "why" Strnad alleges Kabel and ChargeFDIS conspired or "how" it would have happened. [Dkt. 25 at 3.] Strnad counters that he need not plead specific facts to establish conspiracy where those facts are within the knowledge of Defendants given the secretive nature of conspiracies. [Dkt. 23 at 6–7.] And, in any case, he has pled enough facts to give Defendants notice of his claim. [*Id.*]

Unlike fraud, conspiracy claims are not subject to a heightened pleading standard. At the motion to dismiss stage, a plaintiff needs to at least allege the parties to the conspiracy, the general purpose of the conspiracy, and the general time at which the conspiracy was formed. *Maglaya v. Kumiga*, 2015 WL 4624884, at \*12 (N.D. Ill. Aug. 3, 2015) (citing *Hoskins v. Poelstra,* 320 F.3d 761, 764 (7th Cir. 2003)). *Twombly* also made clear that a plaintiff cannot rely on a "naked assertion of conspiracy" but must plead other facts that plausibly suggest an unlawful agreement. 550 U.S. at 557.

The complaint meets these basic requirements. It alleges that Kabel and ChargeFDIS conspired[4] to usurp the Cresco deal from Activate Payments between

---

[4]    If, as Strnad alleges, Kabel owns ChargeFDIS, [*see* Dkt. 1, ¶ 1], it is doubtful Kabel and ChargeFDIS could have legally formed a conspiracy. Under Illinois law, a corporation cannot conspire with itself. *See, e.g.*, *Small v. Sussman*, 713 N.E.2d 1216 (Ill. App. Ct. 1999) (dismissing claim of conspiracy to breach fiduciary duty where complaint alleged that principal shareholder/controlling director of closely held company conspired with that

August and November 2020. [Dkt. 1, ¶¶ 39–41.] The conspirators also acted together to further the conspiracy: Kabel and ChargeFDIS secretly filed to have ChargeFDIS assume a name suspiciously similar to Activate Payments—"Activate Payment Services"—and ChargeFDIS later did make a payment processing deal with Cresco. [*Id.* at ¶¶ 39–41, 43.] It is reasonable to infer from this coordinated action that Kabel and ChargeFDIS agreed to work under the "guise" of "Activate Payment Services" to divert the deal to Cresco. [Dkt. 23 at 6.] Thus, Count II satisfies Rule 8(a) pleading standards.

### 2. Counts III and IV

Next, Counts III and IV claim common law fraudulent concealment and misrepresentation, which are subject to Rule 9(b)'s heightened pleading standard. *See United States Sec. & Exch. Comm'n v. Kameli*, 373 F. Supp. 3d 1194, 1201 (N.D. Ill. 2019) ("Rule 9(b) has three primary purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions;' and (3) providing notice of the claim to the adverse party."). To plead fraudulent misrepresentation in Illinois, a plaintiff must allege "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that

---

company). Nor can employees in the same corporation conspire with each other, with limited exceptions. *Id.* at 1222; *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, 2020 WL 4607247, at *20 (N.D. Ill. Aug. 11, 2020). But given Rule 8(a)'s low pleading bar and the limited information alleged about ChargeFDIS and its relationship to Kabel, the Court leaves this issue for another day.

reliance." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Fraudulent concealment contains the same elements as fraudulent misrepresentation, in addition to an allegation that the defendant "intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Id.* at 571. A duty to disclose exists where the plaintiff and defendant are in a fiduciary or confidential relationship. *Id.*

The complaint satisfies all elements of each fraud claim. Kabel had a fiduciary relationship with Activate Payments and Strnad and resultant duty to accurately disclose Activate Payments' business opportunities. *See supra*, Part III.C.1. Despite this duty, Kabel allegedly concealed information about movement on the Cresco deal and, when asked, falsely told Strnad that it was stagnant and then lost. [Dkt. 1, ¶¶ 33–37.] Kabel knew this information was false because he was simultaneously working to consummate the deal using a separate company. [*Id.* at ¶¶ 39–41.] But he allegedly lied to induce Strnad to dissolve Activate Payments so Kabel could finish the deal himself. [*Id.* at ¶ 37.] Strnad complied, he says, because he had no reason to disbelieve Kabel since he led the Cresco negotiations. [*Id.* at ¶¶ 18, 37.] Finally, dissolving Activate Payments damaged the company because it could have obtained what turned out to be a profitable deal (and possibly other deals). [*Id.* at ¶¶ 43–44.] Activate Payments, and Strnad as shareholder, allege they were ultimately robbed of millions of dollars in profit from the Cresco deal and follow-on deals Kabel obtained. [*Id.* at ¶ 46.] These allegations meet Rule 9(b)'s heightened pleading standard.

Defendants argue that Strnad has not pled fraudulent concealment with particularity because paragraph 68 of the complaint doesn't show that Kabel intentionally concealed information or intended to defraud Strnad. [Dkt. 15 at 5.] This argument falls flat. The complaint's allegations are not limited to paragraph 68 and elsewhere it clearly alleges that Kabel intentionally concealed information so that he could usurp the Cresco deal. [Dkt. 1, ¶¶ 67, 76–79.]

Defendants also argue that Strnad has not alleged with particularity what Kabel concealed from him. [Dkt. 15 at 5; Dkt. 25 at 4.] But again, the Complaint amply describes the "who, what, when, where, and how" of the deception. *Lanahan*, 41 F.4th at 862. From October 2019 to November 2020, Kabel concealed his ongoing work to secure the Cresco deal, including the fact that on August 6, 2020, before Activate Payments was dissolved, he filed to use its name for ChargeFDIS to convince Cresco that it was still dealing with Activate Payments once the company was dissolved. It would be difficult for Strnad to know exactly what details were omitted—such is the nature of concealment. But his complaint provides ample grounds for suspicion, namely that Kabel made the very deal Strnad thought he was pursuing for their mutual benefit shortly after telling him it was a bust. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (fraud can be pled on information and belief when facts constituting fraud are inaccessible to plaintiff and there are reasonable grounds for plaintiff's suspicions).

As to fraudulent misrepresentation, Defendants argue that Strnad has not pled with particularity because he didn't provide enough detail about the

18

conversation between Kabel and Strnad where Kabel falsely told him the Cresco deal was lost and that they should dissolve Activate Payments. [Dkt. 15 at 5.] He asserts that Strnad needed to allege facts about how the decision was made to dissolve the company, what misrepresentations were made, and what Kabel said to cause Strnad to rely on his statements. [Dkt. 25 at 4.] As amply discussed above, the complaint describes all of these things in detail. Strnad didn't need to recount their conversations word for word. His allegations adequately notified Defendants of their alleged role in the fraudulent scheme and satisfy Rule 9(b).

## IV. Conclusion

For the reasons above, the individual claims in Counts I–IV are dismissed without prejudice on shareholder standing grounds. Defendants' motion to dismiss is otherwise denied. Strnad has until December 3, 2024 to amend his complaint to comply with Rule 23.1.

Enter: 24-cv-6177
Date: November 15, 2024

_____
Lindsay C. Jenkins
United States District Judge